UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | CRIMINAL NO. 99-10078-RCL |
| ) | |
| HUGH FRANCIS O'NEIL BARNES ) | |
| ) | |

GOVERNMENT'S RESPONSE TO
DEFENDANT'S PETITION PURSUANT TO 28 U.S.C. § 2255

Now comes the United States, by its attorneys, Michael J. Sullivan, United States Attorney, and David G. Tobin, Assistant U.S. Attorney, and hereby moves this Honorable Court to deny the defendant's petition under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. In support of its response, the United States avers that the defendant's assertions that trial counsel's representation was constitutionally deficient and that the United States breached the terms of the plea agreement are without merit.

STATEMENT OF THE CASE

On March 10, 1999, an Indictment was returned against the defendant, Hugh F. O'Neil Barnes ("Barnes"), charging him with one count of conspiracy to import cocaine into the United States, in violation of 21 U.S.C. §963. [Docket Entry 18, herein after "D."]. On May 12, 1999, a Superseding Indictment was returned against Barnes, again charging him with one count of conspiring to import cocaine into the United States, but expanding the time period of the conspiracy to July 1998 though February 4, 1999.

[D.39]. The Superseding Indictment also included a Notice of Applicability, advising the defendant that because the conspiracy charged in Count One involved more than five kilograms of cocaine the penalty provisions of 21 U.S.C. §960(b)(1)(B)(ii) applied. [D.39]. Barnes pled guilty to Count One of the Superseding Indictment on February 10, 2000, pursuant to a written plea agreement. [D.132]. On December 21, 2000, the district court (Lindsey, J.) conducted a sentencing hearing and imposed a sentence of 135 months' imprisonment, 3 years' supervised release, and a $100 special assessment. [D.173; see D.174]. On March 3, 2003, the First Circuit entered a judgment affirming the defendant's conviction and sentence. [D. 207]. On April 29, 2003, the defendant's petition for hearing and petition for rehearing en banc was denied by the First Circuit. [D. 209]. On June 14, 2004, the defendant filed a Petition Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence. [D. 210].

**STATEMENT OF FACTS**

Because Barnes pled guilty, the facts are drawn from the Presentence Report ("PSR") and the transcript of the sentencing hearing. See United States v. Mateo, 271 F.3d 11, 13 (1st Cir. 2001); United States v. Garcia, 954 F.2d 12, 13 (1st Cir. 1992).

1.   **The Investigation**.

This case arose on January 31, 1999, when co-defendant Samantha Whitney ("Whitney") attempted to smuggle into the United

States from Jamaica six 750-milliliter bottles of liquid cocaine, packaged as Jamaican liquor. [Pre-Sentence Report, paragraph 2, herein after "PSR ¶"]. Whitney was stopped by agents of the United States Customs Service ("Customs"), who seized the bottles of cocaine. [PSR ¶2]. The cocaine had been destined for co-defendants Ibraheim Smith ("Smith") and Precious Noble-Smith ("Noble-Smith")(collectively "the Smiths"), who had been recruited by Barnes in the fall of 1998 to assist him in his cocaine importation scheme. [PSR ¶4]. Prior to Whitney's arrest, the Smiths had recruited co-defendant Jana Demeo to carry Whitney's six bottles, plus three additional bottles of liquid cocaine that had previously imported from Jamaica and were stored in the Smiths' home, from the United States into Bermuda. [PSR ¶¶4-6, 9-10]. The cocaine contained in the bottles was to be processed and distributed in Bermuda. [PSR ¶4]. Although the Smiths managed the logistical end of this and other smuggling trips to Bermuda, Barnes coordinated and ran the entire operation, including recruiting the Smiths, financing the trips, and organizing the deliveries. [PSR ¶¶6, 7, 10, 13, 19, 38, 40].

On the evening of February 1, 1999, the Smiths told Barnes that the couriers would deliver six (of the nine) bottles to Bermuda on the following day. [PSR ¶7]. Unbeknownst to Barnes, the Smiths were cooperating with the government at this time, and a Customs agent, posing as courier Jana Demeo, actually flew to

Bermuda with a second undercover Customs agent to deliver the bottles of cocaine. [PSR ¶7]. While there, the agents were contacted by Barnes, who told them that they would be contacted shortly by the person who would pick up the bottles of cocaine. [PSR ¶13]. A short time later, Judy Spence ("Spence"), a Bermudian resident who was responsible for obtaining and processing the cocaine, called the Customs agents to say that she and her nephew would come to their hotel to pick up the bottles in ten minutes. [PSR ¶15]. Spence and her companion were arrested by Bermudian authorities shortly after they arrived at the hotel. [PSR ¶15]. During their arrest, two of the bottles of cocaine were broken. [PSR ¶15].

Further investigation revealed that Barnes had been involved in smuggling additional bottles of cocaine, using other couriers. [PSR ¶21]. The Smiths acknowledged that they transported a total of nine bottles of liquid cocaine from Jamaica to Bermuda, via the United States, from the period between November 1998 and January 1999. [PSR ¶5 n.1]. Co-defendant Paula Byfield ("Byfield") admitted that she worked directly for Barnes and made four separate trips to and from Jamaica and Bermuda, carrying a total of 12 bottles of liquid cocaine into the United States. [PSR ¶24]. Spence admitted that she was aware of approximately 12 other bottles that had been smuggled into Bermuda as part of Barnes's operation. According to Spence, those 12 bottles contained

4

approximately 105.5 ounces of cocaine: 30 ounces in three bottles, approximately 21 ounces in another three bottles, approximately 26½ ounces of cocaine in another three, and approximately 28 ounces of cocaine in the final three bottles.

2.  **The Presentence Report**.

The PSR held Barnes accountable for 30 bottles of liquid cocaine that had been smuggled into the United States. [PSR ¶36]. This amount included the six bottles seized by Customs from Whitney on January 31, 1999 [PSR ¶30]; three bottles seized from the Smiths' home the following day [PSR ¶30]; nine bottles that Smith and Noble-Smith admitted they carried (either separately or together) from Jamaica to the United States, and, ultimately, to Bermuda, between November 1998 and January 1999 [PSR ¶¶5 n.1, 32]; and 12 bottles smuggled into the country by Byfield [PSR ¶35]. The Probation Office determined that, based upon the average amount of cocaine in the seven bottles analyzed, each bottle contained approximately 189 grams of cocaine and Barnes was thus responsible for 5.67 kilograms of cocaine.[1] [PSR ¶¶2, 16, 36]. The PSR therefore determined Barnes's base offense level ("BOL") to be 32, pursuant to U.S.S.G. §2D1.1(c)(4).

The Probation Office also found that Barnes recruited couriers [PSR ¶¶38, 41], oversaw the drug transactions [PSR ¶39], and

---

[1] Seven of the nine bottles seized by Customs on January 31, 1999 and February 1, 1999 were weighed and found to contain, on average, 189 grams of cocaine per bottle. [PSR ¶¶16, 36].

provided the financing for the couriers' travel [PSR ¶40]. The PSR thus concluded that "Barnes was in charge of the activities of [his coconspirators]," and that he was a leader or organizer of the criminal activity, warranting a four-level enhancement for his role in the offense, pursuant to under U.S.S.G. §3B1.1(a). [PSR ¶42].

The PSR calculated that with a three-level downward adjustment for acceptance of responsibility, Barnes had a total offense level ("TOL") of 33, and fell within Criminal History Category ("CHC") I. [PSR ¶47]. His applicable guidelines sentencing range ("GSR") was therefore 135 to 168 months' imprisonment. [PSR ¶92].

3. **The Sentencing Hearing**.

The district court convened a sentencing hearing on December 21, 2000. [D.173]. Prior to the hearing, Barnes filed a sentencing memorandum in which he contested, *inter alia*, the number of bottles of cocaine attributable to him. [D.167]. He claimed he was not responsible for six bottles smuggled into the United States by the Smiths in December 1998, but indicated he was responsible for the remaining 24 bottles. [D.167 at 13-15]. He also challenged the government's and the PSR's determination that the average amount of cocaine in each bottle was 189 grams. [D.167 at 15]. He contended that the average weight of the cocaine in each bottle, after distillation, was at most 140 grams. [D.167 at 15]. The government also filed a sentencing memorandum in which it stated that it intended to offer testimony as to the number of

bottles, if necessary. [D.171].

At the sentencing hearing, Barnes first withdrew his objection to the number of bottles attributed to him, accepting responsibility for all 30 bottles. He also admitted that all 30 bottles contained liquid cocaine.

Barnes then argued that Probation's and the government's method for estimating the drug weight attributable to him was flawed. Barnes proposed two alternatives to the district court: (1) attribute to him only the weight of cocaine actually recovered, in effect ignoring the drug weight of known, but unrecovered cocaine [G.Add. 21, 22]; or, (2) use the drug quantity average set forth by Spence in her statement. Barnes later withdrew this second suggestion, after determining that this method would result in a higher drug weight than that found by Probation in the PSR.

The district court adopted Probation's and the government's method of calculating the drug weight, and found Barnes responsible for 5.67 kilograms of cocaine. [G.Add. 28]. In doing so, the district court stated:

> I am required to make a reasonable estimate of the quantity of cocaine in these 30 bottles, and in light of what we just learned [the fact that the method originally proposed by Barnes resulted in a higher drug weight], * * * I am inclined to believe that the averaging method used by the government and probation office that results in 5.67 kilograms is a reasonable estimate since the other estimate is higher, that certainly makes this estimate made by the government a reasonable one.

The district court also noted that it could not, as Barnes had suggested, hold Barnes responsible only for the seven bottles of cocaine tested and ignore the other 23 bottles of cocaine smuggled into the country.

The district court next considered Barnes's role in the offense. The court found that Barnes's drug-smuggling organization had at least five members, and that Barnes was the organizer or leader. The court specifically stated that "were there no Mr. Barnes, there would be no organization" and concluded that "there is no better case to attribute the * * * four-level organizer or leader increase [of U.S.S.G. §3B1.1(a)] than to this case."

Finally, the district court found that Barnes's TOL was 33 and his CHC I. [D. 173]. Under the Sentencing Guidelines, Barnes was therefore facing a term of imprisonment of 135 to 168 months, a fine range of $20,000 to $1,000,000, and a three-year supervised release term. The court sentenced Barnes to 135 months' imprisonment, a three-year period of supervised release, no fine, and a $100 special assessment. [D.174].

## ISSUES RAISED IN DEFENDANT"S PETITION

### I. Trial Counsel's Representation During Sentencing Was Not Constitutionally Deficient

The Sixth Amendment guarantees the right to effective assistance of counsel in criminal prosecutions. McMann v. Richardson, 397 U.S. 759, 771 n. 14 (1970). The right to effective assistance of counsel extends to the sentencing phase of trial.

United States v. Glover, 531 U.S. 198 (2001); also see United States v. Pro, 199 F. 3d 37 (1st Cir. 1999).

The Supreme Court established a two-prong test to evaluate ineffective assistance claims. To obtain reversal of a conviction, the defendant must prove: (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defendant, resulting in an unreliable or fundamentally unfair outcome in the proceeding. Strickland v. Washington, 466 U.S. 668, 687 (1984). Under the performance prong of Strickland, there is a "strong presumption" that counsel's strategy and tactics fall "within the wide range of reasonable professional assistance." Strickland v. Washington, 466 U.S. at 689. In the context of a guilty plea, a defendant can satisfy the prejudice prong by demonstrating that but for counsel's deficient performance, a reasonable probability exists that the defendant would not have pleaded guilty and would have insisted on a trial. Hill v. Lockhart, 474 U.S. 52, 59 (1985).

In United States v. Glover, 531 U.S. 198, 203-205 (2001), the Supreme Court found that counsel's alleged error during the sentencing phase, which resulted in a significantly increased sentence for the defendant, could be sufficiently prejudicial to constitute ineffective assistance, provided counsel's performance was unreasonable.

The crux of the defendant's contention is that trial counsel

rendered constitutionally deficient representation during sentencing by failing to challenge the government's assertion that the defendant was responsible for thirty bottles of liquid cocaine.[2] In affirming the defendant's conviction and sentence, the First Circuit addressed the reasonableness of the district court's determination that the defendant was responsible for thirty bottles of liquid cocaine. The First Circuit noted, "we discern no clear error in the sentencing court's estimate of the quantity of cocaine attributable to appellant. The guidelines and our cases contemplate that reasonable estimates are to be made when the exact quantity of drugs involved in an offense cannot be determined. Contrary to appellant's contention, the court did not pyramid inferences. It reached a <u>reasonable</u> and <u>conservative</u> estimate with sufficient indicia of reliability." [See D. 207](emphasis added). The defendant now asserts that trial counsel was constitutionally deficient because he failed to contest calculations of cocaine weight that were "reasonable" and "conservative." Contrary to the defendant's assertion, trial counsel did not merely acquiesce to the government's theory pertaining to drug weight, but sought to have the district court hold the defendant responsible for a weight less than argued by the United States.

Prior to the sentencing hearing on December 21, 2001, the

---

[2] In the Pre-Sentence Report, United States Probation also determined that the defendant should be held responsible for thirty bottles of liquid cocaine.

defendant's counsel filed a sentencing memorandum in which he contested, inter alia, the number of bottles of cocaine attributable to the defendant. [D. 167]. In the sentencing memorandum, the defendant argued that he was not responsible for the six bottles smuggled into the United States by the Smiths in December 1989, but accepted responsibility for the remaining 24 bottles. He also challenged the government's and Probation's determination that the average amount of cocaine in each bottle was 189 grams. The defendant claimed that the average weight of the cocaine in each bottle, after distillation, was at most 140 grams. The government also filed a sentencing memorandum in which it argued that the defendant should be held responsible for 30 bottles of liquid cocaine and that it intended to offer testimony as to the number of bottles, if necessary. [D. 171].

The 30 bottle total recommended by the United States and United States Probation was based on information provided by co-defendants and the number of bottles of liquid cocaine recovered during the investigation. The Smith's acknowledged to investigators that they had transported a total of nine bottles of liquid cocaine from Jamaica to Bermuda, via the United States, for the defendant. Byfield admitted she worked directly for the defendant and smuggled 12 bottles of liquid cocaine into the United States for the defendant. Spence admitted she was aware of 12 other bottles of cocaine that had been smuggled into Bermuda as part of the

defendant's operation.

Faced with the obvious strength of the government's and Probation's arguments pertaining to the number of bottles of liquid cocaine, trial counsel accepted that the defendant was, in fact, responsible for the 30 bottles, not the 24 bottles the defense had argued in its sentencing memorandum. This was a wise and considered tactic by trial counsel in light of the unrefuttable calculations of U.S. Probation.

Although trial counsel did not contest the number of bottles of liquid cocaine, trial counsel mounted a vigorous challenge to the total cocaine weight for which the defendant should be held responsible. The United States and Probation recommended that the defendant be held responsible for 5.67 kilograms of cocaine. [See D. 171]. This weight was calculated by multiplying the average drug weight in the seven recovered bottles of cocaine (189 grams) by thirty bottles. The defendant argued to the Court that it should calculate cocaine weight by one of two methods: 1) attribute to him only the weight of cocaine actually recovered; or 2) use the drug quantity average set forth by Spence in her statement to investigators.[3]

The district court adopted Probation's and the government's method of calculating the drug weight and reasonably and

---

[3] The defendant later withdrew this second suggestion, after it was determined that this method would result in a higher drug weight than that found by Probation in the Pre-Sentence Report.

conservatively concluded that the defendant was responsible for 5.67 kilograms of cocaine. [See D. 173].

The defendant has failed to prove that trial counsel's performance fell below an objective standard of reasonableness. Trial counsel vigorously contested the cocaine weight for which the defendant was to be held accountable for sentencing purposes. He challenged the government's and Probation's determination that the average amount of cocaine in each bottle was 189 grams. He argued that the average weight in each bottle, after distillation, was at most 140 grams. He also sought to minimize the drug weight for which the defendant was to be held accountable by arguing that the court should only consider the cocaine actually recovered in the investigation. The court, following established case law, wisely chose to make a reasonable estimate of total drug weighty based on the totality of the evidence.

Trial counsel was zealous in his representation of the defendant and was in no way ineffective. As a result, the defendant's petition should be denied.

## II. The Government Did Not Breech The Terms of The Plea Agreement

The defendant erroneously argues that the government breeched the terms of the plea agreement by failing to orally inform the Court about a provision of the Plea Agreement pertaining to sentencing factors. The defendant further argues that trial counsel's representation was ineffective because he failed to alert

the Court as to this "breach." The defendant's argument is without merit. The Plea Agreement was provided to the Court during the Rule 11 hearing [D. 132], and counsel for both sides filed sentencing memoranda with the Court [D. 167 & 171]. Trial Counsel also filed a Motion for Downward Departure [D. 167], which the Court denied. [D. 173]. The Court was well aware of the terms of the Plea Agreement and the government was under no obligation to make certain oral arguments to the Court.

## CONCLUSION

The Defendant's arguments under 28 U.S.C. § 2255 are without merit. The United States requests that this Court deny the defendant's petition.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

By:  /s/ David G. Tobin
DAVID G. TOBIN
Assistant U.S. Attorney

CERTIFICATE OF SERVICE

This is to certify that on this 21st day of March, 2005, I placed a true and correct copy of the foregoing response to the defendant's Petition Pursuant to 28 U.S.C. 2255 in the mailbox with first-class prepaid postage affixed addressed to: Hugh F. O'Neil Barnes, FCI Elkton, P.O. Box 10, Lisbon, OH 44432 [Reg. No. 45896-054].

Dted: March 21, 2005

/s/ David G. Tobin
DAVID G. TOBIN
Assistant U.S. Attorney