UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
HUGH FRANCIS O'NEIL BARNES,        )
                                   )
                  Petitioner,      )
                                   )
         v.                        )
                                   )   CIVIL ACTION NO.
UNITED STATES,                     )   04-11422-RCL
                                   )
                  Respondent.      )
_____)

**MEMORANDUM AND ORDER
ON PETITION FOR WRIT OF HABEAS CORPUS**

LINDSAY, District Judge.

**Introduction and Background Facts**

Before the court is a motion of Hugh Barnes (the "petitioner" or "Barnes") for a new trial pursuant to 28 U.S.C. § 2255. Barnes is currently serving a 135-month sentence imposed in this court after he pleaded guilty to one count of conspiracy to import cocaine, in violation of 21 U.S.C § 963. He asserts three grounds for relief: (1) his trial counsel was constitutionally ineffective during sentencing, (2) the government breached the plea agreement it made with him, and (3) his sentence was based on facts found by the judge in violation of *Blakely v. Washington*, 542 U.S. 296 (2004), and *United States v. Booker*, 543 U.S. 220 (2005). Barnes seeks, as relief, a new sentencing hearing. The United States has moved to dismiss the petition, arguing that the claims Barnes makes are meritless. For reasons stated below, I grant the motion to dismiss the petition.

Barnes entered a plea of guilty, on February 10, 2000, to one count of conspiracy to import cocaine into the United States. (Mem. of Law. in Supp. of Pet'r Barnes's Section 2255 Pet. 3 (hereinafter "Petr.'s Br.")) There were five co-defendants named in the indictment with Barnes. Each of the co-defendants was charged with smuggling the cocaine; Barnes was alleged to have coordinated and financed the entire operation. (Govt.'s Resp. to Def's Pet. (hereinafter "Govt's Br. at 2-4.))

Barnes's plea was tendered in accordance with a written plea agreement he entered into with the government. (Def.'s Sentencing Mem. and Mot. for Downward Departure 3 (hereinafter "Petr.'s Sent. Mem.")) By the terms of the agreement, the government promised to take the positions at sentencing that (1) the petitioner's base offense level should be 32 under U.S.S.G. § 2D1.1(c)(4), based on his responsibility under U.S.S.G. § 1B1.3 for a quantity of cocaine of between five and fifteen kilograms, and (2) that the offense level should be increased by three levels pursuant to U.S.S.G. § 3B1.1(b) for the petitioner's role as a manager or supervisor of criminal activity involving at least five participants. (Plea Agreement 2; Petr.'s Sent. Mem. 3.) The plea agreement allowed the petitioner to contest both the drug weight and his role in the offense at sentencing. (Plea Agreement 2; Petr.'s Sent. Mem. 3.)

The cocaine at issue was imported into the United States in liquor bottles. In his sentencing memorandum, the petitioner contested the drug weight by arguing, inter alia, that six of the bottles attributed to him were actually smuggled by his co-defendants on their own and without his knowledge or involvement (Petr.'s Sent. Mem. 13-14), and that the government's calculation of the average weight per bottle was inaccurate. (Petr.'s Sent. Mem. 14-15). The petitioner also argued that he should receive no more than a two-level role enhancement under §

3B1.1(c), rather than the three-level enhancement recommended by the prosecution or the four-level enhancement suggested by the probation officer in the Pre-Sentence Report. (Petr.'s Sent. Mem. 20-21.) In its sentencing memorandum, the government defended its estimate of the drug weight as reasonable and reliable (Govt.'s Sent. Mem. 28-34) and objected strenuously to the petitioner's denial of responsibility for six of the bottles, threatening that if the petitioner testified to that effect, the government would advocate that the court revoke his three-level acceptance of responsibility reduction under § 3E1.1 (Govt.'s Sent. Mem. 26-28 and 27 n.15). Finally, the government recommended a role enhancement of "at least three levels." (Govt.'s Sent. Mem. 34-35.)

At sentencing, the petitioner's counsel abandoned his challenge to the number of bottles for which the petitioner was responsible (Sent. Hr'g Tr. 4-5), but continued to contest the total drug weight (Sent. Hr'g Tr. 6-9). Although the petitioner's counsel argued that the cocaine quantity should be established beyond a reasonable doubt, I determined that only proof by a preponderance or the evidence was required. (Sent. Hr'g Tr. 12-13.) I agreed with the government's proposed weight of 5.67 kilograms and set the petitioner's base offense level at 32. (Sent. Hr'g Tr. 28.) The petitioner argued for only a two-level role enhancement, and the government advocated a three-level increase. I accepted the probation officer's recommendation of a four-level increase, however, because I found that the petitioner was an organizer of the criminal activity. (Sent. Hr'g Tr. 29-30.) I also granted a three-level downward adjustment for acceptance of responsibility, resulting in a total offense level of 33. Because the petitioner was in Criminal History Category I, he had a guidelines sentencing range of 135 to 168 months. (Sent. Hr'g Tr. 30-31.) I followed the government's recommendation and sentenced the petitioner to

135 months imprisonment, three years of supervised release and a $100 special assessment. (Sent. Hr'g Tr. 37-38.)

## Discussion

### I. Ineffective Assistance of Counsel

The petitioner argues that his counsel's abandonment of the challenge to the number of bottles containing cocaine was ineffective assistance of counsel. The Sixth Amendment guarantees the right to effective assistance of counsel in criminal prosecutions, including during the sentencing phase. *See Glover v. United States*, 531 U.S. 198, 202-03 (2001); *McMann v. Richardson*, 397 U.S. 759, 771 (1970). To establish a claim of ineffective assistance of counsel, the petitioner must demonstrate "two elements: first, trial counsel's performance must be deficient in some way sufficiently substantial to deny him effective representation; and second, that deficiency must have resulted in prejudice, defined as a 'reasonable probability that, but for counsel's unprofessional errors, the result . . . would have been different.'" *Epsom v. Hall*, 330 F.3d 49, 53 (1st Cir. 2003) (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). To establish that his counsel's performance was deficient, the petitioner must overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [petitioner] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689 (internal citations and quotations omitted). In the sentencing context, the petitioner can establish prejudice by demonstrating a reasonable probability that his sentence would have been lower absent counsel's deficient performance. *See Glover*, 531 U.S. at 203-04.

4

In this case, the petitioner can not establish that his counsel's performance was deficient, given the standard of proof applicable at sentencing and the government's proffer of evidence on the petitioner's responsibility for all 30 bottles of cocaine.  His counsel made a reasonable strategic decision to forego what amounted to a losing proposition, namely, the challenge of the number of bottles containing cocaine for which the petitioner was responsible.  Had the petitioner testified in accordance with his original challenge, he risked losing the favorable reduction for acceptance of responsibility.  Thus the choice that counsel made was well "within the wide range of reasonable professional assistance" for counsel to concede the petitioner's responsibility for all 30 bottles.  *See Strickland*, 466 U.S. at 689.  Similarly, the petitioner was unlikely to prevail on a challenge to the government's calculation of average drug quantity and could not mount a more vigorous challenge on this point without the petitioner's testimony and its attendant risks.  I conclude then that the petitioner's Sixth Amendment claim must fail.

**II.  Breach of Plea Agreement**

The creation of a plea agreement between the defendant and the government entitles the defendant to certain protections, because "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Santobello v. New York*, 404 U.S. 257, 262 (1971).  Because the government's promises in a plea agreement induce the defendant to waive fundamental constitutional rights, the government is held to "the most meticulous standards of both promise and performance." *United States v. Clark*, 55 F.3d 9, 12 (1st Cir. 1995) (quoting *Correale v. United States*, 479 F.2d 944, 947 (1st Cir. 1973)).  Accordingly, the government's breach of a plea agreement will not be considered harmless simply because the sentencing judge

would have given the same sentence had the government honored its agreement. *Santobello*, 404 U.S. at 262.  "The *quid pro quo* from the defendant's point of view . . . [is] the prestige of the government and its *potential* to influence the district court." *United States v. Velez Carrero*, 77 F.3d 11, 11-12 (1st Cir. 1996) (emphasis in original).

The petitioner argues that the government breached the terms of the plea agreement that required it to recommend a only three-level enhancement under § 3B1.1(b) for the petitioner's role in the offense.  Specifically, the petitioner faults the government for language in its sentencing memorandum that the petitioner's offense level should be enhanced "*at least* three levels" (Govt.'s Sent. Mem. 34-35) (emphasis added), and for the government's failure to repeat the recommendation of a three-level enhancement in argument at the sentencing hearing.

The record here suggests that the government may have breached the plea agreement. The government was bound by the agreement categorically to recommend a three-level enhancement.  The government, therefore, should not have argued, as it did in its sentencing memorandum, for "at least" three levels of enhancement.  The government's language in the sentencing memorandum could be taken as a recommendation of either the three-level enhancement under § 3B1.1(b) that it was bound to support or the four-level enhancement under § 3B1.1(c) proposed by the probation officer.  As the role enhancement was one of the two significant bargaining points in the plea agreement, this departure from the terms of the agreement was significant.

At the sentencing hearing, however, I assumed the government to be recommending a three-level increase, despite the ambiguous language in the sentencing recommendation.  (Sent. Hr'g Tr. 29 (discussing the role enhancement, I said: "The government's position is that it should

be a three-level increase, an increase attributable to somebody who was a supervisor or manager.")) The government itself never made any statement at the hearing regarding the role enhancement. Nor did the petitioner's counsel, the probation officer, or any one else argue that the government might be understood to recommend anything other than a three-level increase. Therefore, despite what was at best the government's inartful language in the sentencing memorandum and at worst an intentional evasion of the agreement, the petitioner still received the benefit of his bargain: the prestige of the government in support of a three-level increase.

    This case is distinguishable from *Santobello v. New York*, 404 U.S. 257 (1971). The petitioner was not prejudiced here not because I would have reached the same decision if the government had complied with the plea agreement, but rather because I understood the government to be making the very recommendation that it was bound by the plea agreement to make. In fact, it is not clear what relief the petitioner could receive, as even resentencing before a new judge would put him in exactly the same position he was in at the original sentencing hearing.

### III. *Blakely* and *Booker*

    The petitioner argues that his sentence was unconstitutionally imposed under *Blakely v. Washington*, 542 U.S. 296 (2004), and *United States v. Booker*, 125 S. Ct. 738 (2005). The First Circuit has held that neither *Blakely* nor *Booker* applies retroactively. *Cirilo-Munoz v. United States*, 404 F.3d 527, 532-33 (1st Cir. 2005). The petitioner's conviction became final on or around July 22, 2003, ninety days after the denial of his petition for rehearing at the First Circuit, when the time in which he could have applied for certiorari to the Supreme Court expired. *See Derman v. United States*, 298 F.3d 34, 42 (1st Cir. 2002). As *Blakely* was decided on June 24, 2004 and *Booker* was decided on January 12, 2005, the petitioner does not get the benefit of

7

either new rule.

## **Conclusion**

For the foregoing reasons, the motion of the respondent to dismiss the petition therefore is granted and the petition is dismissed. The clerk shall enter judgment for the respondent.

SO ORDERED.

                                                 /s/ REGINALD C. LINDSAY
                                                 United States District Judge

DATED: July 26, 2006